Filed 7/8/15  P. v. Castro CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANIEL CASTRO,<br><br>    Defendant and Appellant. | D066771<br><br><br><br>(Super. Ct. No. SCD248288) |

APPEAL from a judgment of the Superior Court of San Diego County,

Timothy R. Walsh, Judge.  Affirmed.

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant

and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Megan J.

Beale, Deputy Attorneys General, for Plaintiff and Respondent.

Daniel Castro was charged with violating Vehicle Code section 23153,

subdivision (a) (driving under the influence (DUI) causing injury, with two or more prior

DUI convictions within 10 years); Vehicle Code section 23153, subdivision (b) (driving with a measurable blood alcohol content (BAC), causing injury and with two or more prior DUI convictions within 10 years); and Penal Code section 1320.5 (failure to appear while on bail).

Following a preliminary examination, Castro unsuccessfully moved to suppress the results of a warrantless blood test. Castro petitioned for review of the trial court's denial of his suppression motion, which we denied.

Thereafter, Castro pled guilty to driving with a BAC of 0.08 percent or more, causing injury, and admitted his two prior convictions for DUI. The prosecutor agreed to dismiss the remaining charges in exchange for his guilty plea. Castro was sentenced to the maximum term of seven years in prison for the DUI charge and a consecutive term of two years eight months for failing to appear while out on bail.

On appeal, Castro renews his challenge to the denial of his suppression motion. As we explain, we conclude the court properly denied that motion and thus affirm his judgment of conviction.

FACTUAL AND PROCEDURAL BACKGROUND

On the night of his arrest, Castro had been drinking at a nightclub in San Diego until about 1:45 a.m. when he left to drive home. Witnesses reported Castro appeared "really drunk" before he left the nightclub. Several bystanders attempted to stop Castro from driving away by standing in front of his vehicle, and one person even attempted to pull Castro out of the vehicle and take the keys out of the ignition. Despite these efforts, Castro drove away, entered the freeway driving in the opposite direction of traffic, and hit

2

a smaller car head on. The other driver had to be cut out of her car by emergency responders and was severely injured. The collision site spread across every lane of the freeway and was at least 200 feet long.

Officer Vizcarro arrived at the scene of the collision around 2:00 a.m. and saw Castro walking with fire personnel away from his vehicle. Vizcarro approached Castro and observed that he had red watery eyes, was stumbling as he walked, and smelled of alcohol. Vizcarro contacted the police dispatch and learned that Castro was on probation for a previous DUI. Castro submitted to a breathalyzer test and registered a BAC of 0.317 at 2:21 a.m., a 0.342 at 2:23 a.m., and a 0.331 at 2:25 a.m. Castro was arrested and taken to the hospital for minor injuries. At that time, only Vizcarro and his partner were on the scene.

Vizcarro remained at the scene of the accident to direct the investigation and assist with clearing the highway. Once the scene was under control, Vizcarro went to the hospital where Castro had been taken. Vizcarro arrived around 3:00 a.m. and saw trauma nurses assisting Castro. Vizcarro requested a blood technician who arrived around 3:30 a.m. At that time, Castro was sedated and the technician took a blood sample. Castro's BAC was 0.33 percent. After he was released from the hospital, Castro told police he did not remember leaving the club or the collision.

## DISCUSSION

Castro argues the court erred in denying his motion to suppress the results of his warrantless blood draw. He contends that the blood draw constituted a violation of the

3

Fourth Amendment rights as set forth in *Missouri v. McNeely* (2013) 569 U.S. __ [133 S.Ct. 1552] (*McNeely*).)  We disagree.

In reviewing the denial of a motion to suppress evidence, "[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment."  (*People v. Glaser* (1995) 11 Cal.4th 354, 362 (*Glaser*).)

The Fourth Amendment provides that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause."  (U.S. Const., 4th Amend.)  However, a warrantless search of a person is reasonable if it falls within a recognized exception.  (*McNeely, supra*, 133 S.Ct. at p. 1558, citing *United States v. Robinson* (1973) 414 U.S. 218, 224.)

"One well-recognized exception," and the one at issue here, "applies when the ' "exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." ' "  (*Kentucky v. King* (2011) 563 U.S. __ [131 S.Ct. 1849, 1856].)  In some circumstances law enforcement may conduct a search without a warrant to prevent the imminent destruction of evidence.  (See *Cupp v. Murphy* (1973) 412 U.S. 291, 296.)  However, while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, it does not do so categorically.  (*McNeely*, *supra*, 133 S.Ct. at p. 1563; *Schmerber v. State of California* (1966) 384 U.S. 757, 770-771 (*Schmerber*).)

4

Although the natural dissipation of alcohol in the blood is not alone sufficient to support a finding of an exigency (see *McNeely, supra*, 133 S.Ct. at p. 1564), alcohol's dissipation may support an exigency when circumstances make obtaining a warrant impractical. (*Ibid.*) The court looks to the totality of the circumstances to determine whether law enforcement faced an emergency that justified acting without a warrant. (*People v. Toure* (2015) 232 Cal.App.4th 1096, 1103 (*Toure*), citing *McNeely*, *supra*, at p. 1559.) The relevant factors in determining whether a warrantless search is reasonable include the practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence. (*McNeely*, *supra*, at p. 1568; see also *Schmerber,* 384 U.S. at p. 770.)

In *McNeely*, the defendant was pulled over for speeding and crossing the centerline. He refused to take a breath or blood test, and subsequently, defendant's blood was drawn without a warrant. (*McNeely, supra,* 133 S.Ct. at p. 1557.) The Court noted that the situation the officer was facing did not constitute an emergency in which he could not practicably obtain a warrant. (*Ibid.*) The Court found *McNeely* to be a routine DUI investigation where no factors other than the natural dissipation of blood alcohol suggested that there was an emergency, and thus, the nonconsensual, warrantless test violated the defendant's right to be free from unreasonable searches of his person. (*Id.* at pp. 1557, 1568; *Toure, supra,* 232 Cal.App.4th at p. 1104.)

Castro alleges that, like the defendant in *McNeely, supra,* 133 S.Ct. 1552, his investigation involved a "routine, middle of the night DUI accident." However, there are factors present that show this accident was anything but routine. As noted, Castro caused

5

a multicar collision by driving the wrong way on the freeway, which resulted in the hospitalization of two people and the temporary closure of the highway. The instant case thus did not involve a "routine DUI stop" like was the situation in *McNeely*, but instead involved an emergency situation in the middle of the night where only a few officers were initially at the accident scene.

The Supreme Court in *Schmerber* held that a nonconsensual, warrantless blood draw was reasonable due to the presence of "special facts" that created an emergency that justified an exception to the warrant requirement. (*Schmerber, supra*, 384 U.S. at pp. 770-771.) In that case, the officer arrived at the scene of a car accident and noticed that the defendant smelled like liquor and had bloodshot eyes. (*Id.* at pp. 768-769.) The defendant was taken to the hospital and the officer had to investigate the scene of the accident, which delayed him getting to the hospital. (*Ibid.*) These "special facts" and the naturally dissipating BAC taken together, created a situation where the officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances threatened the 'destruction of evidence.' " (*Id.* at p. 770, citing *Preston v. United States* (1964) 376 U.S. 364, 367 (*Preston*).)

In *Toure*, the court held that a nonconsensual, warrantless blood draw was proper under the Fourth Amendment because it was justified by exigent circumstances. (*Toure, supra,* 232 Cal.App.4th at p. 1105.) In that case, there was a traffic accident in which at least one person sustained injuries, the collision was spread out over approximately 2,000 feet, the defendant was combative at the scene, which delayed officers from investigating

6

the accident, he prevented officers from conducting field sobriety tests, and he refused to provide officers with information about when he had stopped drinking. (*Id.* at p. 1104.) The amount of time it took officers to conduct their investigation and to subdue the defendant threatened the destruction of evidence. (*Id*. at pp. 1104-1105.) The court concluded that the finding of an exigency was not based solely on the natural dissipation of alcohol in the blood, rather it was established by the totality of the circumstances and therefore the blood draw was justified. (*Id*. at p. 1105.)

The case here presents "special facts" that are analogous to *Schmerber* and *Toure*. Like in *Schmerber*, Vizcarro "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant under the circumstances threatened the 'destruction of evidence.' " (*Schmerber, supra*, 284 U.S. at p. 770, citing *Preston, supra,* 376 U.S. at p. 367.) Similar to *Schmerber* and *Toure*, here Castro caused a collision that required Vizcarro to focus his attention on matters besides securing a warrant. Vizcarro was directing the investigation and assisting with clearing the highway. He was unable to make it to the hospital until over one hour after the collision. In that time, Castro's BAC was dissipating and, like in *Toure*, Vizcarro was unaware when Castro had stopped drinking which would make it difficult to "calculate backward" to determine Castro's BAC at the time of the accident. (*Toure, supra,* 232 Cal.App.4th at p. 1104.) The circumstances here present " 'practical problems [to] obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence.' " (*Ibid.,* quoting *McNeely, supra*, 133 S.Ct. at p. 1568.)

We conclude the trial court's finding of exigent circumstances was supported by substantial evidence in the record and was not based solely upon the natural dissipation of Castro's blood alcohol content. The totality of the circumstances here, presented a situation where the officer could not have reasonably obtained a warrant without threatening the destruction of evidence. (See *Schmerber, supra*, 384 U.S. at pp. 770-771; *Toure*, *supra*, 232 Cal.App.4th at p. 1104.) We thus independently conclude the warrantless blood draw was reasonable under the totality of the circumstances and did not constitute a violation of Castro's Fourth Amendment rights.[1]

DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

NARES, J.

IRION, J.

---

[1]    Due to our finding of exigent circumstances, we do not address People's implied consent or good faith argument.