Filed 12/30/16 (opinion on rehearing)

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> WILLIAM DANIEL CADY, <br><br> Defendant and Appellant. | D068582 <br><br><br> (Super. Ct. No. SCD253340) |

APPEAL from a judgment of the Superior Court of San Diego County, Louis R. Hanoian, Judge.  Affirmed.


Cannon & Harris and Donna L. Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Junichi P. Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

Arising from an incident in which William Daniel Cady drove his vehicle at an excessive and unsafe speed while intoxicated, resulting in an accident that killed three of

his passengers and injured two others, the jury found Cady guilty of the following crimes: three counts of gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)) (counts 4 - 6), with the further finding that he personally inflicted great bodily injury (*id*., §§ 1192.7, subd. (c)(8), 1192.8); one count of driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a)) (count 7); one count of driving with a blood alcohol content of 0.08 percent or more causing injury (*id*., § 23153, subd. (b)) (count 8); and one count of driving under the combined influence of alcohol and a drug causing injury (*id*., § 23153, subd. (f)) (count 9). For counts 7 through 9 the jury found that Cady personally inflicted great bodily injury upon five different victims (Pen. Code, § 12022.7, subd. (a)), and for each of the counts, the jury found that Cady proximately caused great bodily injury or death. (Veh. Code, § 23558.) The trial court sentenced Cady to 18 years in prison.

Cady raises two contentions on appeal. First, he contends that the crime of driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a)) in count 7 is a lesser included offense of the crime of driving under the combined influence of alcohol and a drug causing injury (*id*., § 23153, subd. (f)) in count 9, so that he should not have been convicted in count 7. Second, he contends that for the charge of gross vehicular manslaughter while intoxicated in counts 4 through 6 (Pen. Code, § 191.5, subd. (a)), the trial court prejudicially erred in not sua sponte giving the jury the option of convicting him of the lesser included offense of vehicular manslaughter while intoxicated (*id.*, § 191.5, subd. (b)) for those counts.

2

We conclude that the conviction in count 7 for driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a)) is not a lesser included offense of the driving under the combined influence of alcohol and a drug causing injury (*id.*, § 23153, subd. (f)), for which Cady was convicted in count 9. We also conclude that there is no merit to Cady's contention that the trial court erred by failing to instruct on vehicular manslaughter while intoxicated as a lesser included offense of gross vehicular manslaughter while intoxicated in counts 4 through 6. Accordingly, upon reconsideration after ordering a rehearing in this matter, we affirm the judgment.[1]

I.

FACTUAL AND PROCEDURAL BACKGROUND

On the evening of January 10, 2014, Cady and his friends Dustin Barr, Jeff Becker, Taylor Bednarski, Shon Gilliam and Trevor Rodgers drove in Cady's Cadillac Escalade for a night of drinking in local bars in San Diego. After leaving the second bar at around 11:00 p.m., the group got back into the Escalade, and Cady drove onto Interstate 805 toward the transition ramp to State Route 52, with the goal of returning back to Bednarski and Rodgers's house.

As Cady approached the transition to State Route 52 he was traveling at a high rate of speed, and several of his passengers told him to slow down. Cady replied with a

---

[1] After our original opinion was filed in this matter, the People filed a petition for rehearing, contending that we overlooked pertinent authority in concluding that driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a)) is a lesser included offense of driving under the combined influence of alcohol and a drug causing injury (*id.*, § 23153, subd. (f)). We granted the People's petition to reexamine the issue and to consider the authorities cited by the People in their petition.

3

statement such as, "I'll drive this fucking car however the fuck I want," and then accelerated further. One witness also remembered Cady laughing like somebody who "lost their mind" as he accelerated. Shortly after accelerating, Cady lost traction on his vehicle as he went around a curve, causing the Escalade to roll at least five times, travel up an embankment and then slide back onto the freeway. Another vehicle then impacted the Escalade, causing the Escalade to spin to its final position. During the accident four of the passengers — Barr, Bednarski, Gilliam and Rodgers — were ejected from the vehicle. Bednarski and Gilliam died immediately from blunt force trauma. Barr and Rodgers were seriously injured, but survived. Becker died at the scene inside the Escalade from blunt force trauma. An accident reconstruction expert calculated that Cady was driving between 87 and 97 miles per hour when he lost control of the vehicle.

Based on a blood draw from Cady after the accident, an expert concluded that depending on whether the alcohol that Cady had consumed that evening was already fully absorbed into his system, Cady's blood alcohol level during the accident was between 0.1 and 0.18. Another expert testified that based on an analysis of the cannabinoids in Cady's blood drawn at 2:18 a.m., Cady had used marijuana within hours of the blood draw, and the level of active cannabinoids would have been significantly higher during the accident than during the blood draw. The expert witness testified that the combination of active marijuana with alcohol produces an "additive effect," which is an increase in the impairing effect of both drugs, so that "the combination of those two [drugs] at the same time produces an effect greater than either substance on its own."

4

Cady was tried on three counts of second degree murder (Pen. Code, § 187, subd. (a)) (counts 1-3); three counts of gross vehicular manslaughter while intoxicated (*id.*, § 191.5, subd. (a)), with the further allegation that he personally inflicted great bodily injury (*id.*, §§ 1192.7, subd. (c)(8), 1192.8) and proximately caused great bodily injury or death (Veh. Code, § 23558) (counts 4-6); one count of driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a)) (count 7); one count of driving with a blood alcohol content of 0.08 percent or more causing injury (*id.*, § 23153, subd. (b)) (count 8); and one count of driving under the combined influence of alcohol and a drug causing injury (*id.*, § 23153, subd. (f)) (count 9). With respect to counts 7 through 9, it was also alleged that Cady personally inflicted great bodily injury upon five different victims (Pen. Code, § 12022.7, subd. (a)), and proximately caused great bodily injury or death (Veh. Code, § 23558).

At trial, defense counsel stated during closing argument that Cady was taking responsibility for the gross vehicular manslaughter charges in counts 4 through 6 and the driving under the influence charges in counts 7 through 9. He urged the jury to return a verdict of guilty on those counts but to find Cady not guilty on the murder counts.

The jury found Cady not guilty of murder, but found him guilty of all of the other counts and made true findings on all of the factual allegations.

The trial court sentenced Cady to 18 years in prison, selecting count 8 as the principal term, with the sentences on each of the other counts stayed pursuant to Penal Code section 654.

5

II.

DISCUSSION

A.  *The Offense of Driving Under the Influence of Alcohol Causing Injury Is Not a Lesser Included Offense of Driving Under the Combined Influence of Alcohol and a Drug Causing Injury*

We first consider Cady's argument that he should not have been convicted in count 7 for driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a)) because that offense is a lesser included offense of driving under the combined influence of alcohol and a drug causing injury (*id*., § 23153, subd. (f)), for which he was convicted in count 9.

Although "it is generally permissible to convict a defendant of multiple charges arising from a single act or course of conduct[,]" a " 'judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses. . . .' . . . [¶] When a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed." (*People v. Sanders* (2012) 55 Cal.4th 731, 736 (*Sanders*), italics & citations omitted.)  Based on this principle, Cady contends that he should not have been convicted for violating Vehicle Code section 23153, subdivision (a) by driving under the influence of alcohol because that crime is a lesser included offense of driving under the combined influence of alcohol and drugs (Veh. Code, § 23153, subd. (f)), for which he was convicted in count 9.

6

In deciding whether multiple convictions are barred because one offense is a lesser included offense of the other, we apply the "elements" test. (*People v. Reed* (2006) 38 Cal.4th 1224, 1229.) " 'Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former.' . . . In other words, ' "[i]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former." ' " (*Sanders*, *supra*, 55 Cal.4th at p. 737.) We therefore turn to the statutory elements of the two provisions at issue here.

As provided in Vehicle Code section 23153, subdivision (a), "It is unlawful for a person, *while under the influence of any alcoholic beverage* to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver." (Veh. Code, § 23153, subd. (a), italics added.) Under Vehicle Code section 23153, subdivision (f), "It is unlawful for a person, *while under the combined influence of any alcoholic beverage and drug*, to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver." (Veh. Code, § 23153, subd. (f), italics added.) The two code provisions are identical except for the italicized portions indicated above.

"California's first drunk driving statute, enacted in 1913, prohibited any 'intoxicated person' from driving a motor vehicle on a public highway. (Stats. 1913,

7

ch. 326, § 17, p. 646; . . . .)  The prohibition was later redefined as driving 'under the influence' of alcohol."  (*People v. McNeal* (2009) 46 Cal.4th 1183, 1192, citation omitted (*McNeal*).  The crime of driving under the influence of drugs was added in 1927.  (Stats. 1927, ch. 752, § 112, p. 1436 [making it unlawful for a person to drive when "under the influence of . . . narcotic drugs"].)

Apparently because prosecutors were having difficulty obtaining convictions against persons who drove in an impaired state after having consumed both drugs and alcohol, the crime of driving under the "combined influence" of alcohol and drugs was added to the Vehicle Code in 1959.  (Stats. 1959, ch. 1282, § 1,  p. 3433, amending Veh. Code, § 23102, subd. (a).)  Although the existing legislative history for the 1959 enactment is sparse, letters contained in the legislative file from district attorneys who supported the legislation explain that the crime of being under the "combined influence" of alcohol and drugs was added because "many defendants who have incapacitated themselves to drive safely through the combined use of drugs and alcohol are evading conviction because it cannot be proved that their erratic driving resulted exclusively from the use of one or the other of these substances."  (J. Frank Coakley, letter to Governor Edmund G. Brown, June 17, 1959.)  As the Commissioner of the California Highway Patrol explained, "[e]nforcement officers, prosecutors and courts have been faced with a serious problem in the prosecution of persons charged with driving while under the influence of intoxicating liquor, inasmuch as such persons are using as a defense their taking of tranquilizers or other drugs which combined with alcohol contributed to their

8

intoxicated condition."  (Bradford M. Crittenden, Interdepartmental Communication to Governor Edmund G. Brown, June 29, 1959.)

Prior to the current version of section 23153, which became effective on January 1, 2014 (Stats. 2012, ch. 753, § 5), the proscription against driving under the influence of alcohol, of a drug, or of a combination of alcohol and a drug, was set forth in a single provision, which provided:  "It is unlawful for any person, *while under the influence of any alcoholic beverage or drug, or under the combined influence of any alcoholic beverage and drug*, to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver.  (Former Veh. Code, § 23153, subd. (a), italics added.)

The legislative history for the current version of the statute shows that the crimes of driving under the influence of alcohol, driving under the influence of drugs and driving under the combined influence of alcohol and drugs were separated into three different subdivisions of Vehicle Code section 23153 for the purpose of facilitating better data collection.  Specifically, the new version of the statute would yield valuable data about the percentage of arrests for driving under the influence that were related to specific categories of impairing substances.[2]

---

2  As stated by the author of the bill amending Vehicle Code section 23153, " 'Under current law, all individuals arrested for driving under the influence are arrested under a single, catch-all section of the law.  Current law does not distinguish between individuals arrested for being under the influence of alcohol, drugs, or a combination of both.  [¶] This process of arresting individuals for [driving under the influence (DUI)] leaves state

In applying the elements test, the question before us is whether a person who drives "while under the combined influence of any alcoholic beverage and drug" (Veh. Code, § 23153, subd. (f)) necessarily also drives "while under the influence of any alcoholic beverage" (*id.*, § 23153, subd. (a)). We answer this question by considering whether there is any scenario in which in a person could drive under the combined influence alcohol and drugs in violation of section 23153, subdivision (f) without also driving under the influence of alcohol in violation of section 23153, subdivision (a).

Case law from our Supreme Court has long defined what is required to establish that someone has driven under the influence of alcohol, as that term is used in Vehicle Code section 23153, subdivision (a). A person is "under the influence" of alcohol within the meaning of the Vehicle Code if the alcohol " 'so far affected the nervous system, brain or muscles as to impair to an appreciable degree the ability to operate the vehicle in a manner like that of an ordinarily prudent and cautious person in the full possession of his faculties, using reasonable care and under like conditions.' " (*People v. Haeussler* (1953) 41 Cal.2d 252, 261; see also *McNeal*, *supra*, 46 Cal.4th at p. 1193.) As *Haeussler*

and local entities with little information to study and understand trends on the different types of substances involved in DUI incidents. [¶] [Assembly Bill No. ]2552 will break up the code section of the law used by law enforcement to charge individuals for DUI into three sections. These new sections will allow state and local entities to collect arrest data that is more precise and that can reflect the actual numbers of alcohol, drug or a combination of alcohol and drugs. This type of data is critical for health and safety agencies to make better informed decisions regarding funding for officer training, equipment, and/or drug and alcohol programs. [¶] This new way of arresting people is a top priority for law enforcement and for state officials because it will help them determine the prevalence of alcohol or other drugs in DUI arrests and find better ways to control it.' " (Assem. Com. on Pub. Safety, analysis of Assem. Bill No. 2552 (2011-2012 Reg. Sess.) as amended Apr. 19, 2012, pp. 2-3.)

explained when first approving this definition, "persons may be 'under the influence of intoxicating liquor' within the meaning of [the Vehicle Code] without being affected to the extent commonly associated with 'intoxication' or 'drunkenness,' " as long as the alcohol has impaired the safe operation of a vehicle to an appreciable degree. (*Haeussler* at p. 262.)

The same definition of "under the influence" applies to the crime of driving "under the combined influence of any alcoholic beverage and drug" in violation of Vehicle Code section 23153, subdivision (f). (*McNeal*, *supra*, 46 Cal.4th at pp. 1192-1193, quoting *Byrd v. Municipal Court* (1981) 125 Cal.App.3d 1054, 1058 [" 'To be "under the influence" within the meaning of the Vehicle Code, the . . . liquor and drug(s) must have so far affected the nervous system, the brain, or muscles as to impair to an appreciable degree the ability to operate a vehicle in a manner like that of an ordinarily prudent and cautious person in full possession of his faculties.' "].)

The People argue that a person under the *combined* influence of drugs and alcohol is not necessarily also under the influence of *alcohol* because, in certain circumstances, impairment in the ability to operate a vehicle would not have arisen had the person consumed the alcohol *by itself*. Specifically, the People posit a situation in which a person combines a prescription narcotic drug with a small amount of alcohol, not sufficient in and of itself to cause impairment, and experiences a synergistic effect with the narcotic that makes it unsafe to drive a vehicle. According to the People, because it is possible to be impaired by the combined influence of alcohol and a drug, when the same amount of alcohol consumed alone would not cause impairment, the crime of driving

11

under the influence of alcohol is not a necessary lesser included offense of driving under the combined influence of alcohol and a drug.  As we will explain, we agree.

As a matter of logic, there are several possible ways for a person to violate Vehicle Code section 23153, subdivision (f)'s proscription on driving while under the combined influence of any alcoholic beverage and drug:  (1) to drive after having consumed enough alcohol to *independently* impair the person's ability to drive and enough drugs to *independently* impair the person's ability to drive; (2) to drive after having consumed enough alcohol to *independently* impair the person's ability to drive, along with taking drugs that increase the level of impairment to an appreciable degree, but when taken *alone* would not have made it unsafe to drive; (3) to drive after having taken enough drugs to *independently* impair the person's ability to drive, along with having consumed an amount of alcohol that increases the person's level of impairment to an appreciable degree, but when consumed *alone* would not have made it unsafe to drive; and (4) to drive after having consumed a combination of drugs and alcohol, either one of which when taken alone may not have been sufficient to cause impairment, but when taken *together* impaired the person's ability to drive because of a synergistic or additive effect or other physiological or psychological process that causes multiple substances to work together to cause impairment.  Under either the third or fourth scenario set forth above, a defendant convicted of violating section 23153, subdivision (f) by driving under the combined influence of alcohol and drugs would not have consumed enough alcohol to cause impairment had the alcohol been consumed by itself.  That person will therefore not have violated section 23153, subdivision (a) by driving under the influence of alcohol

12

because the alcohol itself would not have " 'so far affected the nervous system, brain or muscles as to impair to an appreciable degree the ability to operate the vehicle in a manner like that of an ordinarily prudent and cautious person in the full possession of his faculties, using reasonable care and under like conditions.' " (*Haeussler*, *supra*, 41 Cal.2d at p. 261.)  Accordingly, there are some situations in which a person could violate section 23153, subdivision (f) by driving under the combined influence of alcohol and drugs but not violate section 23153, subdivision (a) by driving under the influence of alcohol.

Because a person does not necessarily violate 23153, subdivision (a) when he or she violates 23153, subdivision (f), we conclude under the elements test that the crime of driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a)) is not a lesser included offense of the crime of driving under the combined influence of alcohol and a drug causing injury (*id.*, § 23153, subd. (f)).

B.      *Cady's Contention That the Trial Court Should Have Instructed on the Lesser Included Offense of Vehicular Manslaughter While Intoxicated Lacks Merit*

For counts 4 through 6, in which Cady was charged with gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)), the trial court did not instruct the jury with the lesser included offense of vehicular manslaughter while intoxicated (*id.*, § 191.5, subd. (b)).  The difference between the two offenses is that the

13

lesser included offense of vehicular manslaughter is committed *without* gross negligence. (*Ibid.*)[3]

Cady contends that the trial court prejudicially erred in not instructing with the lesser included offense. "On appeal, we review independently the question whether the trial court improperly failed to instruct on a lesser included offense." (*People v. Souza* (2012) 54 Cal.4th 90, 113 (*Souza*).) As we will explain, Cady's argument fails for several reasons.

1. *Any Error in Failing to Instruct with the Lesser Included Offense Was Invited by Cady, and Thus Cady May Not Raise the Issue of Error on Appeal*

The first issue is whether Cady's argument fails because any error in failing to instruct on the lesser included offense was invited by Cady, barring him from raising the error on appeal.

---

[3] Penal Code section 191.5, subdivision (a) states: "Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, *and with gross negligence*, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, *and with gross negligence*." (Italics added.)

Penal Code section 191.5, subdivision (b) states: "(b) Vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, *but without gross negligence*, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, *but without gross negligence*." (Italics added.)

14

"A trial court has a sua sponte duty to 'instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser.' . . . Substantial evidence in this context is evidence from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense. . . . [T]he court need instruct the jury on a lesser included offense only '[w]hen there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of ' the lesser offense." (*People v. Shockley* (2013) 58 Cal.4th 400, 403-404, citations omitted (*Shockley*).) A trial court errs in failing to instruct on a lesser included offense supported by the evidence " ' "even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given." ' " (*Souza*, *supra*, 54 Cal.4th at p. 114.)

Nevertheless, even in instances where the trial court errs by failing to instruct on a lesser included offense supported by the evidence, "the claim may be waived under the doctrine of invited error if trial counsel both ' "intentionally caused the trial court to err" ' and clearly did so for tactical reasons. [Citation.] Invited error will be found . . . only if counsel expresses a deliberate tactical purpose in resisting or acceding to the complained-of instruction." (*Souza*, *supra*, 54 Cal.4th at p. 114.) " '[A] defendant may not invoke a trial court's failure to instruct on a lesser included offense as a basis on which to reverse a conviction when, for tactical reasons, the defendant persuades a trial court not to instruct on a lesser included offense supported by the evidence. [Citations.] In that situation, the doctrine of invited error bars the defendant from challenging on appeal the trial court's

15

failure to give the instruction.' " (*People v. Horning* (2004) 34 Cal.4th 871, 905 (*Horning*).)

For us to find that the doctrine of invited error applies, "the record must show only that counsel made a conscious, deliberate tactical choice between having the instruction and not having it. If counsel was ignorant of the choice, or mistakenly believed the court was not giving it to him, invited error will not be found. If, however, the record shows this conscious choice, it need not additionally show counsel correctly understood all the legal implications of the tactical choice. Error is invited if counsel made a conscious tactical choice." (*People v. Cooper* (1991) 53 Cal.3d 771, 831 (*Cooper*).)

Here, the record overwhelmingly shows that defense counsel made a deliberate tactical choice to forego an instruction on the lesser included offense to gross vehicular manslaughter. When discussing jury instructions, the following exchange took place between the trial court and defense counsel:

> "The Court: Are you affirmatively requesting that court not provide [lesser included offenses]?
>
> "[Defense counsel]: I am.
>
> "The Court: Because as I read it, I have a sua sponte duty. And in some cases even over the defense objection, to provide [lesser included offenses].
>
> "[Defense counsel]: We let me — my view is, based on our opening statement and our overall strategy, is we are admitting guilt as to counts 4 through 9. I don't see any utility in requesting [lesser included offenses] on any of those. . . . So because of that, that's why I'm . . . asking the court to not give those. That's my train of thought.
>
> "The Court: Yes. And so long as the court is convinced that there's no way that the conduct in this case is something less than what the greater charge is, then the court doesn't have to give [a lesser included offense]

16

under those circumstances.  Basically, we're in agreement that the facts, as they've been presented in the case, are no less than a vehicle manslaughter while intoxicated with gross negligence.

"[Defense counsel]:  Okay."

The prosecutor concurred with the approach of not instructing on lesser included offenses, and the trial court then inquired whether defense counsel had discussed the particular strategy with Cady and whether Cady was in agreement.  Defense counsel indicated that Cady had agreed with the strategy.

Consistent with the strategy selected by defense counsel, during closing argument defense counsel stated to the jury that Cady was taking responsibility for committing gross vehicular manslaughter as charged in counts 4 through 6 and argued that the jury should find him guilty on those counts but find him not guilty of murder.  Defense counsel specifically stated, "It's undisputed that Mr. Cady operated a vehicle in a grossly negligent manner" and repeated the substance of that statement two other times during closing argument, conceding that Cady acted with gross negligence.  In short, the defense strategy was to admit guilt for gross vehicular manslaughter in an attempt to avoid a guilty verdict on the murder charges, and as part of that strategy defense counsel did not want to distract the jury by instructing that it could find Cady guilty on a lesser included offense.

Accordingly, the record clearly shows that defense counsel "made a conscious tactical choice" to forego the instruction on the lesser included offense.  (*Cooper*, *supra*, 53 Cal.3d at p. 831.)  As Cady specifically invited the trial court not to instruct on the lesser included offense, he " 'may not invoke a trial court's failure to instruct on a lesser

17

included offense as a basis on which to reverse a conviction.' " (*Horning*, *supra*, 34 Cal.4th at p. 905.)[4]

2. *An Instruction on a Lesser Included Offense to Gross Vehicular Manslaughter While Intoxicated Was Not Supported by the Evidence at Trial*

As we have explained, an instruction on a lesser included offense must be given " 'if there is substantial evidence the defendant is guilty only of the lesser.' . . . Substantial evidence in this context is evidence from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense." (*Shockley*, *supra*, 58 Cal.4th at p. 403, citation omitted.) Thus, the trial court here was required to instruct on vehicular manslaughter *without gross negligence* (Pen. Code, § 191.5, subd. (b)), only if a reasonable jury could conclude that Cady was not guilty of

_____

4 Cady points out that based on the trial court's statements when discussing jury instructions, the trial court may not have relied upon defense counsel's deliberate choice to forego the instruction on the lesser included offense as a ground for deciding not to give the instruction, as it stated that it agreed with defense counsel that the evidence did not support such an instruction. Cady argues that when the trial court gives an independent reason for its decision to forego the instruction rather than relying on defense counsel's request, the doctrine of invited error does not apply. The People respond that "the invited error doctrine analysis is contingent on whether the record makes clear that appellant deliberately *invited* the error, not on the extent to which the court's decision was based on appellant's invitation." We agree with the People. The purpose of the invited error doctrine is to prevent a defendant from asserting on appeal that a trial court decision for which he advocated below is error and therefore a basis for reversal. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 49 [" 'The doctrine of invited error is designed to prevent an accused from gaining a reversal on appeal because of an error made by the trial court at his behest.' "].) Therefore, the crucial inquiry is whether defendant *advocated* for the erroneous ruling, not whether the trial court's error was *caused* by that advocacy.

18

the greater offense of vehicular manslaughter *with gross negligence* (*id*., § 191.5, subd. (a)).

Gross negligence is "defined as the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences." (*People v. Watson* (1981) 30 Cal.3d 290, 296.) " 'The state of mind of a person who acts with conscious indifferences to the consequences is simply, "I don't care what happens." ' " (*People v. Bennett* (1991) 54 Cal.3d 1032, 1036.) "A finding of gross negligence is made by applying an *objective* test: if a *reasonable person* in defendant's position would have been aware of the risk involved, then defendant is presumed to have had such an awareness." (*Watson*, at p. 296.)

Here, the only conclusion that a reasonable juror could draw from the evidence presented at trial was that Cady acted with gross negligence. Although, as Cady points out, there was some dispute based on the testimony of Barr and Rodgers whether Cady was travelling at an excessive speed *before* he entered the transition ramp to State Route 52, it was undisputed that Cady drove at an excessive and unsafe speed as he entered the transition ramp. Further, it was undisputed that several passengers in the vehicle pleaded with Cady to slow down, but instead of heeding their advice, Cady accelerated to a speed of 87 to 97 miles per hour as he entered a curve, stating something such as "I'll drive this fucking car however the fuck I want." Under the circumstances, the only reasonable conclusion is that Cady was aware of the risk posed by his excessive speed and had an opportunity to correct his behavior but, in conscious indifference to the consequences,

19

Cady accelerated further and rejected the concerns of his passengers, leading to the deadly accident.[5]

As there was no "[s]ubstantial evidence . . . from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense" (*Shockley*, *supra*, 58 Cal.4th at p. 403), we conclude that the trial court properly declined to instruct on the lesser included offense to gross vehicular manslaughter while intoxicated.

C.    *Any Error Was Harmless*

Even if there was any basis to Cady's contention that the trial court erred in failing to instruct with the lesser included offense to gross vehicular manslaughter while intoxicated, Cady would be unable to establish prejudicial error.

"Error in failing to give a lesser included instruction is reviewed for prejudice under the *People v. Watson* (1956) 46 Cal.2d 818 standard." (*People v. Walker* (2015) 237 Cal.App.4th 111, 115.) Under that standard, reversal is warranted only if it appears "reasonably probable" the defendant would have obtained a more favorable outcome had the error not occurred. (*Watson*, at p. 836.)

We may consider defense counsel's statements during closing argument when determining whether an error in instructing the jury was prejudicial. (*People v. D'Arcy*

---

5    Cady argues that a reasonable jury could have decided that gross negligence was not proven because it could have credited evidence that Cady drove at an excessive speed only for a short time on the transition ramp, but not before, and based on that evidence could have concluded that Cady did not have time to consider the risks associated with his actions or have time to correct his behavior. We disagree. The undisputed evidence establishes that Cady's passengers had time to warn him to slow down and Cady had an opportunity to consider and then decisively rejected their pleas, choosing to accelerate further and thereby increase the danger to everyone in the vehicle.

(2010) 48 Cal.4th 257, 297 [the trial court's error in failing to instruct that the special circumstance of murder in the commission of mayhem is inapplicable if the mayhem was merely *incidental* to the murder was harmless because defense counsel did not argue that the mayhem was merely incidental].)  Here, as we have explained, during closing argument defense counsel repeatedly stated that Cady's actions amounted to gross vehicular manslaughter and urged the jury to return a guilty verdict on counts 4 through 6.  Based on defense counsel's concession that Cady was guilty of gross vehicular manslaughter while intoxicated, it is not reasonably probable that the jury would have found Cady guilty of the lesser included offense of vehicular manslaughter without gross negligence while intoxicated had it been given that option.  Therefore, even if Cady could establish that the trial court erred, any error was harmless.

## DISPOSITION

The judgment is affirmed.


IRION, J.

WE CONCUR:



McCONNELL, P. J.



AARON, J.

21