Filed 8/26/20  P. v. Swenson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C089146 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FE017645) |
| v. | |
| WALTER BRANDON SWENSON, | |
| Defendant and Appellant. | |

Following a high-speed chase through a residential neighborhood, defendant Walter Brendon Swenson was found guilty by jury of assault with a deadly weapon on a peace officer, felony reckless evading law enforcement, misdemeanor unlawful taking of a motor vehicle, and misdemeanor hit and run.

On appeal, defendant raises seven claims:  (1)  the evidence was insufficient to support his conviction for assault with a deadly weapon on a peace officer; (2) execution of the sentences for some of his convictions should have been stayed pursuant to Penal

1

Code section 654;[1] (3) the trial court erred by imposing consecutive sentences; (4) the court erred by not instructing the jury sua sponte on assault with a deadly weapon, a lesser included crime of assault with a deadly weapon on a peace officer; (5) the court erred by permitting a witness to impermissibly identify defendant in court following an unreasonably suggestive question by the prosecutor; (6) the court erred by modifying the jury instruction for general intent; and (7) the court erred by imposing fines and fees without first determining his ability to pay.  We will affirm.

## FACTS AND PROCEEDINGS

Defendant stole a Honda Civic when the car's owner, who was giving defendant a ride, stopped to put gas in the car.  Approximately one week later, Sacramento County Sheriff's Deputy Ken Gouveia was wearing a police uniform and was riding a marked police motorcycle when an automated license plate reader mounted on his motorcycle informed him as he passed the Civic that it had been reported stolen.  Gouveia confirmed the license plate number and broadcast his location and a description of the driver.  Gouveia made eye contact with defendant, who then sped up, rapidly switched lanes, and changed direction.  Gouveia identified defendant in court as the driver of the Civic.

Another deputy in the area, Ronald Sutter, participated in the pursuit of the Civic.  Sutter also rode a marked motorcycle and wore a police uniform.  When it became clear defendant was fleeing from them, Gouveia and Sutter activated their emergency lights and sirens and Gouveia requested air support.

Defendant fled through a residential neighborhood at no less than 50 miles per hour and as high as the mid-80s.  After turning into a dead-end parking lot, he slowed and turned around, colliding with a parked car in the process.  After hitting the parked car,

---

[1] Further undesignated statutory references are to the Penal Code.

defendant accelerated back out of the parking lot and drove directly at Gouveia, forcing Gouveia to jump from his motorcycle to avoid being hit.

Officer Julie Robertson also assisted in the pursuit. Robertson drove a marked police sports utility vehicle (SUV). Robertson drove toward defendant's location but in the opposite direction as defendant. As she approached an intersection and prepared to drive slowly through it, she saw defendant's vehicle and heard on the radio that defendant was driving toward her. To the left of defendant's lane of travel was a left-turn lane and to the right was an empty lane. Defendant crossed left from his lane, moving completely across the left-turn lane and entering Robertson's (oncoming) lane such that he drove directly toward her, going the wrong way in her lane at a high speed. Robertson turned her wheel sharply to the right and accelerated in an attempt to avoid being hit. Although she was successful in moving away at the last second, defendant's car came within a few feet of her, and she thought he was going to hit and kill or injure her. Sheriff's Deputy Michael Mantzouranis, who was following defendant in a marked patrol car with his emergency lights activated, saw defendant cross the turn lane and enter Robertson's lane, as did air support. For officer safety reasons, the pursuit was terminated. Air support continued to monitor defendant, and ground units remained nearby to rejoin the pursuit when safe. Officers later found and arrested defendant.

A jury found defendant guilty of assault with a deadly weapon on Robertson, a peace officer engaged in the performance of her duties (Pen. Code, § 245, subd. (c); count one), not guilty of the same charge as to Gouveia (count two), and guilty of felony reckless evading law enforcement (Veh. Code, § 2800.2, subd. (a); count three), misdemeanor unlawful taking of a motor vehicle (Veh. Code, § 10851, subd. (a); count four), and misdemeanor hit and run (Veh. Code, § 20002, subd. (a); count five).

The trial court denied defendant's motion to stay execution of the sentences under section 654 for the hit and run and evading counts and sentenced him to the upper term of five years in prison for count one and a consecutive term of eight months--one-third the

3

middle term--in prison for count three.  The court sentenced defendant to consecutive terms in county jail of 300 days for count four and 85 days for count five, deemed time served based on defendant's custody credits.  The court found true an allegation defendant violated his probation, and revoked probation, sentencing defendant to a concurrent term of two years.  The court also imposed multiple fines and fees, which we discuss *post*.

Defendant timely appealed.

## DISCUSSION

### I

*Sufficiency of the Evidence to Support Assault Conviction*

Defendant contends the evidence is insufficient to support his conviction for assault with a deadly weapon as to Robertson.  He argues there is insufficient evidence that his "driving close" to Robertson's vehicle could directly and probably result in the application of force to her.  He adds it is unlikely he knew Robertson was a peace officer because her emergency lights and siren were not activated at the time and because he was approaching her marked SUV "head on" and "at a high rate of speed."

To assess the sufficiency of the evidence, we review the whole record to determine whether it discloses substantial evidence to support the verdict--i.e., evidence that is reasonable, credible, and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Maury* (2003) 30 Cal.4th 342, 396.)  We review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  (*People v. Boyer* (2006) 38 Cal.4th 412, 480.)  " '[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.'  [Citation.]  We do not reweigh evidence or reevaluate a witness's credibility."  (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129.)

4

Section 245, subdivision (c) states in relevant part: "Any person who commits an assault with a deadly weapon or instrument, other than a firearm, or by any means likely to produce great bodily injury upon the person of a peace officer . . . , and who knows or reasonably should know that the victim is a peace officer . . . engaged in the performance of his or her duties, when the peace officer . . . is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for three, four, or five years." The trial court instructed the jury with CALCRIM No. 860, which provides in part: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person; OR did an act that by its nature would directly and probably result in the application of force to a person and the force used was likely to produce great bodily injury; [¶] 2. The defendant did the act willfully; [¶] 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [¶] 4. When the defendant acted, he had the present ability to apply force with a deadly weapon or likely to produce great bodily injury to a person; [¶] 5. When the defendant acted, the person assaulted was lawfully performing his or her duties as a peace officer; [¶] AND [¶] 6. When the defendant acted, he knew, or reasonably should have known, that the person assaulted was a peace officer who was performing his or her duties."

We find the evidence sufficient to support defendant's conviction for assault with a deadly weapon on Robertson. Defendant, who was driving in the opposite direction of Robertson, did not move into the open lane on his right but instead crossed through a left-turn lane and aimed his car directly at Robertson's marked police SUV. There were no vehicles in front of defendant at the time he aimed his car directly at Robertson, and none to the right side, so defendant cannot suggest he was merely attempting to avoid other cars. Robertson was not driving behind or in front of other vehicles, so her SUV was not

5

disguised by other cars in traffic. Robertson thought she was going to be killed or injured. She managed to maneuver her SUV out of defendant's way, and defendant missed her by only a few feet. Others saw defendant drive straight for Robertson.

Defendant's argument that he might not have recognized Robertson's SUV as a police vehicle is speculative. Moreover, while Robertson's emergency lights and siren were not activated, she was driving a marked police SUV with an emergency lights bar on her roof; her vehicle was reasonably identifiable from the front. Further, the video evidence shows that Mantzouranis was very close behind defendant and in the same type of vehicle as Robertson. When defendant first drove toward Robertson, he was approaching her from the front, two lanes over, and she was barely moving. The white doors on her SUV were clearly visible from any side angle, such as that angle from which defendant first approached her, before moving his car across another lane to face her head on. Because defendant was actively fleeing from law enforcement, his claim that he lacked reasonable awareness that an SUV with white doors and a light bar on the roof approaching his position contained a law enforcement officer strains credulity.

We also disagree with defendant that there is insufficient evidence his conduct could directly and probably lead to contact with Robertson's vehicle. It is clear from the video that defendant drove directly at Robertson while in her lane. Had Robertson not accelerated to get out of the lane, he would have collided with her.[2] The evidence is sufficient to support defendant's conviction for assault with a deadly weapon on a peace officer in the performance of her duties.

---

[2] Although defendant argues that "Robertson's vehicle was stationary or almost at a complete stop until *after* appellant's vehicle had passed it," the video evidence clearly shows her vehicle accelerating and turning just in time to get out of defendant's path as he maintains his high rate of speed.

## II

### *Lesser Included Offense Instruction*

Defendant contends the trial court erred by failing to instruct the jury on the law of assault with a deadly weapon as a lesser included crime of assault with a deadly weapon on a peace officer in the performance of her duties. He asserts there is substantial evidence that defendant did not identify Robertson's SUV as a police vehicle because he approached her from the front, she did not have her lights on or siren activated at the time of the assault, and there was no evidence that the SUV had distinctive police markings on its front. We disagree.

A. *Duty to Instruct*

" 'The trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request.' [Citations.] 'That obligation encompasses instructions on lesser included offenses if there is evidence that, if accepted by the trier of fact, would absolve the defendant of guilt of the greater offense but not of the lesser.' [Citations.] 'To justify a lesser included offense instruction, the evidence supporting the instruction must be substantial—that is, it must be evidence from which a jury composed of reasonable persons could conclude that the facts underlying the particular instruction exist.' [Citations.] [¶] ' "Conversely, even on request, the court 'has no duty to instruct on any lesser offense unless there is substantial evidence to support such instruction.' " [Citation.] This substantial evidence requirement is not satisfied by " 'any evidence . . . no matter how weak,' " but rather by evidence from which a jury composed of reasonable persons could conclude "that the lesser offense, but not the greater, was committed." [Citation.] "On appeal, we review independently the question whether the trial court failed to instruct on a lesser included offense." ' " (*People v. Souza* (2012) 54 Cal.4th 90, 115-116 (*Souza*).) "Doubts as to the sufficiency of the evidence to warrant instructions

7

should be resolved in favor of the accused." (*People v. Wilson* (1967) 66 Cal.2d 749, 763.)

B. *Invited Error*

The People contend defendant waived his instructional argument under the doctrine of invited error. We disagree.

During a conference with the prosecutor and defense counsel about jury instructions, the trial court stated that it had met with the attorneys and agreed upon the instructions it would provide to the jury. The parties agreed the instructions were a stipulated set. The court stated it was, "of course, mindful of its sua sponte duty to instruct on lessers when appropriate." It listed the lesser included crimes of assault with a deadly weapon on a peace officer and both parties agreed they were not requesting instruction on any of them.

"A trial court errs in failing to instruct on a lesser included offense supported by the evidence ' " 'even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given.' " ' [Citation.]" (*People v. Cady* (2016) 7 Cal.App.5th 134, 145.) "Nevertheless, the claim may be waived under the doctrine of invited error if trial counsel both ' "intentionally caused the trial court to err" ' and clearly did so for tactical reasons. [Citation.] Invited error will be found, however, only if counsel expresses a deliberate tactical purpose in resisting or acceding to the complained-of instruction. [Citations.]" (*Souza*, *supra*, 54 Cal.4th at p. 114.) "The existence of some conceivable tactical purpose will not support a finding that defense counsel 'invited' an error in instructions. The record must reflect that counsel had a deliberate tactical purpose." (*People v. Avalos* (1984) 37 Cal.3d 216, 229.)

Here, the record only shows defendant acquiesced to the trial court's decision to not instruct on assault with a deadly weapon as a lesser included crime of assault with a deadly weapon on a peace officer. Defense counsel stated he "ha[d] no issue with" the instructions, expressly stated he did not request the assault with a deadly weapon

8

instruction, and he declined an invitation to be heard on the issue. At no point did defense counsel state a tactical purpose for not requesting the instruction. While defendant might have conceivably had a tactical purpose for not requesting the instruction, such a conceivable purpose is insufficient. (*People v. Avalos*, *supra*, 37 Cal.3d at p. 229.) Defendant did not invite error and therefore did not waive his claim of instructional error.

C. *Analysis*

The issue before us is whether there is substantial evidence from which a jury composed of reasonable persons could conclude defendant was guilty of assault with a deadly weapon but not guilty of assault with a deadly weapon on a peace officer. (See *Souza*, *supra*, 54 Cal.4th at pp. 115-116.) That issue turns on whether a reasonable juror could conclude defendant aimed his car directly at Robertson but did not know she was a peace officer engaged in her duties. We conclude that substantial evidence does not support such a finding.

As defendant correctly observes, he was driving "erratically" at speeds in excess of 80 miles per hour, had already struck one parked vehicle, had crossed into the opposite lane of travel numerous times, and was being chased by multiple police vehicles. As we have detailed, Robertson was driving a marked patrol SUV, and defendant first approached her with a side view of her car, before moving to face her head on.

While defendant crossed into the opposite lane of travel on several other occasions, his assault on Robertson was the only instance in which he crossed another entire lane to move into a head on position against traffic, aiming his car at an oncoming vehicle. As we discussed *ante*, at the time defendant aimed his car at Robertson's SUV, there were no other cars in defendant's lane, or in the lane to his right. Nor were there cars in front of or behind Robertson, which could have disguised her vehicle. Moreover, Robertson was driving a marked police SUV with a bar of emergency lights on the roof, identical to the SUV pursuing defendant and distinguishable from the front. She was

9

driving slowly, two lanes to the left of defendant when he aimed his car at her. From that angle, defendant would have been able to see Robertson's white side doors.

We acknowledge that defendant had collided with a parked car before he assaulted Robertson, but the context of those two incidents is readily distinguishable. When defendant struck the parked car, he was driving around the edge of a parking lot, apparently either looking for a path to flee on foot or turning around to drive back out past the two officers on motorcycles who had cornered him in the lot. At the time he assaulted Robertson, he was driving straight down an open road at high speeds, with no other vehicles impeding him. Rather than drive straight past Robertson--a maneuver he had already completed many times during the chase when passing other oncoming cars-- defendant purposefully crossed the turn lane and drove in Robertson's lane, aiming his car at her SUV.

Defendant's conduct supports only one reasonable conclusion: he identified Robertson as a police officer and deliberately positioned his car to aim at her SUV. Therefore, the trial court was not obligated to instruct the jury sua sponte on any of the lesser included crimes of assault with a deadly weapon on a peace officer.

III

*Section 654*

Defendant contends the trial court erred when it denied his request to stay execution of his sentences for reckless evading (count three) and hit and run (count five) pursuant to section 654. He argues that the assault on Robertson, the reckless evading, and the hit and run were all part of one common intent or plan: to avoid arrest. The court disagreed: "The crimes in this case, in particular Counts One and Three and the others were a divisible course of conduct based upon the intent and objective of the defendant. He acted with more than one objective. [¶] In the act of evading police, he was acting with specific intent to evade. He was trying to flee and to get away. When he [committed the assault], rather than flee or drive away from law enforcement, he aimed

10

his car specifically at Officer Robertson's car. And whether he was playing chicken, or whether he wanted to cause damage or hurt the officer or hurt himself, this act had a separate objective different from solely intending to evade. [¶] These are different acts with different objectives, and therefore, the request under [section] 654 is denied."

Section 654, subdivision (a) provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

Section 654 applies not only where there was one act in the ordinary sense, but also where there was a course of conduct that violated more than one statute but nevertheless constituted an indivisible transaction. (*People v. Perez* (1979) 23 Cal.3d 545, 551.) However, if the evidence discloses that a defendant entertained multiple criminal objectives, he may be punished for the independent violations committed in pursuit of each objective. (*Ibid.*) " 'It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible.' " (*People v. Hicks* (1993) 6 Cal.4th 784, 789.)

Recently, the Fourth Appellate District, Division One, concluded that section 654 did not bar multiple punishments for evading a peace officer with reckless driving and assault with a deadly weapon on a peace officer, crimes that occurred during a high-speed car chase with police. (*People v. Jimenez* (2019) 32 Cal.App.5th 409, 413-415, 426.) In *Jimenez* the defendant drove into the opposing lane of traffic where a law enforcement vehicle was pursuing him, forcing the pursuing vehicle to "swerve out of the way at the last moment to avoid a head-on collision." (*Id.* at p. 414.) The court explained defendant "could have driven on his side of the road or moved rather than driving head on toward [the law enforcement] vehicle. He chose not to do so, aggravating the severity of the situation. [The defendant's] initial efforts trying to evade the first vehicle, and his

11

subsequent assaultive conduct, 'were volitional and calculated, and were separated by periods of time during which reflection was possible.' " (*Id.* at p. 426.)

" 'The defendant's intent and objective are factual questions for the trial court.' " (*People v. Coleman* (1989) 48 Cal.3d 112, 162.)  Trial courts have broad latitude to determine whether a defendant harbored one or more objectives, and we uphold their findings on appeal if there is any substantial evidence in the record to support them. (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.)  " 'We review the court's determination of [a defendant's] "separate intents" for sufficient evidence in a light most favorable to the judgment, and presume in support of the court's conclusion the existence of every fact the trier of fact could reasonably deduce from the evidence.  [Citation.]' [Citation.]" (*People v. Andra* (2007) 156 Cal.App.4th 638, 640-641.)

A.  *Counts One and Three*

Defendant argues he acted with a single criminal intent in count one, assaulting Robertson, and count three, evading police.  We disagree.  As in *People v. Jimenez*, *supra*, 32 Cal.App.5th 409, defendant could easily have stayed in his lane, moved into the lane to his right, or moved into the turn lane to his left, and successfully continued his effort to evade capture without going out of his way to drive his vehicle toward Robertson.  Instead, he faced her down.  There is substantial evidence supporting the trial court's finding that defendant harbored separate criminal intents and objectives during the pursuit.  Therefore, multiple punishments were permissible.

B.  *Counts Three and Five*

Defendant next contends he acted with a single criminal intent when committing count five, hit and run, and count three, evading police.  Defendant contends he hit the parked car merely because he lost control of the car when trying to evade officers, not because he had a separate criminal intent.

The trial court did not make express findings as to the application of section 654 with respect to the hit and run other than to say that "the others were a divisible course of

conduct." But "implicit in the trial court's . . . . sentencing order is that defendant entertained separate intentions . . . ." (*People v. Garcia* (2008) 167 Cal.App.4th 1550, 1565.) At issue here is whether defendant made a conscious decision to flee from the scene of the collision, not the collision's causation. Although this is a close question, we conclude substantial evidence supports the trial court's finding.

At the time of the collision, defendant was penned in a parking lot by two officers. He faced a choice: to give up and take responsibility for the damage he had just caused, or to leave the scene of the accident and continue his reckless evasion. We have no doubt defendant was motivated to leave the scene in large part by a desire to evade capture. Nevertheless, he willfully and intentionally left the scene of the accident; had he been successful, he would have avoided responsibility for the collision and resulting damage. There is substantial evidence to support the trial court's implied finding that defendant harbored separate criminal intents--avoiding capture, but also avoiding responsibility for the collision immediately after it occurred.

IV

*Consecutive Sentencing*

Defendant next argues the trial court abused its discretion by imposing consecutive sentences on counts one, three, and five. He contends the objectives motivating defendant's crimes were not sufficiently independent to authorize consecutive sentences. We see no abuse of discretion.

" '[A] trial court has discretion to determine whether several sentences are to run concurrently or consecutively. [Citations.] In the absence of a clear showing of abuse, the trial court's discretion in this respect is not to be disturbed on appeal. [Citation.] Discretion is abused when the court exceeds the bounds of reason, all of the circumstances being considered.' [Citation.] [¶] The criteria applicable to the trial court's discretion are set forth in California Rules of Court, rule 4.425[(a)], which states that in imposing consecutive sentences a trial court may consider: (1) whether the

13

'crimes and their objectives were predominantly independent of each other'; (2) whether the 'crimes involved separate acts of violence or threats of violence'; and (3) whether the 'crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior.' [Citation.] However, these criteria are not exclusive. [Cal. Rules of Court,] Rule 4.408(a) states: 'The enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made. Any such additional criteria must be stated on the record by the sentencing judge.' " (*People v. Caesar* (2008) 167 Cal.App.4th 1050, 1059-1060, disapproved on other grounds in *People v. Superior Court (Sparks)* (2010) 48 Cal.4th 1, 18.)

As we discussed *ante*, the evidence supports the trial court's finding that these three counts involved separate objectives. There is substantial evidence that defendant's intent during the assault was to cause Robertson to fear violence and injury, his intent in evading was to get away from police, and the objective of the hit and run was, at least in part, to avoid accountability for the collision. The existence of independent objectives is sufficient to support a consecutive term. (Cal. Rules of Court, rule 4.425(a)(1); *People v. Caesar*, *supra*, 167 Cal.App.4th at pp. 1059-1060.) Here, defendant's crimes also involved separate acts: an attempt to evade capture, an assault on Robertson, and an attempt to avoid accountability. The court did not abuse its discretion by sentencing these counts consecutively.

V

*In-Court Identification*

Defendant next contends a witness's in-court identification of him was unnecessarily suggestive and deprived him due process of law. Acknowledging that his trial counsel failed to object to the identification, defendant contends his counsel was constitutionally ineffective by failing to object.

14

A. *Procedural History*

During the testimony of the owner of the car defendant stole, the following exchange took place between that owner and the prosecutor:

"Q: Do you know Walter Swenson?

"A: No

"Q: Do you recognize anybody here in court from before?

"A: No.

"Q: I'm going to ask you to look specifically at two people to my right. Do you recognize anybody here in court today?

"A: Yes, yes, him. Yes - - wait, wait.

"(Witness is looking).

"Is this Brandon? Cause his hair, I mean.

"Q: The person seated two seats next to me, do you know him as Brandon?

"A: The hair is cut - - yeah."

Defense counsel did not object to the exchange. The witness later agreed that the person who took his car "looks like the person here in court but their hair has been cut." The witness later testified regarding defendant: "If he was the one caught in my car, he is the one. I just wanted to say that he doesn't -- he just cut his hair. If he was in that car, he took my car. I just had to say that." Defense counsel did not ask any questions of the witness.

B. *Ineffective Assistance of Counsel*

A criminal defendant is entitled to the effective assistance of counsel, whether appointed or retained. (See *Cuyler v. Sullivan* (1980) 446 U.S. 335, 344-345; *People v. Montoya* (2007) 149 Cal.App.4th 1139, 1147.) " 'A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel.' [Citation.]" (*People v. Centeno* (2014) 60 Cal.4th 659, 674.)

15

An ineffective assistance of counsel claim has two prongs. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) First, defendant must show that his counsel's representation was deficient in falling below an objective standard of reasonableness under prevailing professional norms. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216.) Second, defendant must show there is a reasonable probability that, but for counsel's errors, the result would have been different. (*Id.* at pp. 217-218.) " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*Id.* at p. 218.) If defendant makes an insufficient showing on either one of these components, his ineffective assistance claim fails. (*People v. Holt* (1997) 15 Cal.4th 619, 703.)

"Unless a defendant establishes the contrary, we shall presume that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.] If the record 'sheds no light on why counsel acted or failed to act in the manner challenged,' an appellate claim of ineffective assistance of counsel must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' [Citation.]" (*People v. Ledesma, supra,* 39 Cal.4th at p. 746.) The defendant bears the burden of proving ineffective assistance of counsel by a preponderance of the evidence. (*People v. Harris* (1993) 19 Cal.App.4th 709, 714.)

C. *Analysis*

The People assert defense counsel made a tactical decision to acknowledge defendant's guilt on the misdemeanor and evading charges to focus the jury's attention on the assault counts. Defendant disagrees; he asserts "[i]t is disingenuous to suggest that [defendant's] 'admitting' to being a vehicle thief made the jury any less likely to convict him on the felony charges."

16

But as our Supreme Court has observed, "[c]ounsel may have concluded that honesty and candor with the jurors was necessary so as not to lose credibility with them." (*People v. Gurule* (2002) 28 Cal.4th 557, 597; see *People v. Mayfield* (1993) 5 Cal.4th 142, 177 ["candor may be the most effective tool available to counsel"].)  Therefore, we do see a conceivable tactical purpose for defense counsel to refrain from contesting the identification of defendant, which supported the misdemeanors and the evading charge, in order to focus on the two assault counts, which are serious felonies.  (§ 1192.7, subd. (c)(11).)  Indeed, in closing argument, defense counsel argued: "Folks, earlier this week, I mentioned that I would stand before you in a few days and ask you to find Mr. Swenson guilty of stealing a car as well as hit-and-run causing property damage, and that's what I'm here to do.  And that I ask you to find him not guilty of assault on the two officers.  [¶]  That's really the crux of this case, okay."  Counsel proceeded to argue that defendant was not guilty of the assault counts.  As to one of the two assault counts, counsel was successful.

Because defense counsel's decision to not object appears clearly strategic, we conclude counsel was not constitutionally ineffective for not objecting to the challenged identification.

VI

*Modifying the Jury Instruction for General Intent*

Defendant contends the trial court modified a pattern jury instruction in such a way that it confused the jury and deprived him of due process.

A.  *Legal Background*

The trial court has a duty to instruct sua sponte on the joint union of act and intent. (*People v. Alvarez* (1996) 14 Cal.4th 155, 220.)  "In reviewing a claim of error in jury instructions in a criminal case, this court must first consider the jury instructions as a whole to determine whether error has been committed.  [Citations.]  We may not judge a single jury instruction in artificial isolation, but must view it in the context of the charge

17

and the entire trial record. [Citation.] An appellate court cannot set aside a judgment on the basis of instructional error unless, after an examination of the entire record, the court concludes that the error has resulted in a miscarriage of justice. [Citation.] A miscarriage of justice occurs only when it is reasonably probable that the jury would have reached a result more favorable to the appellant absent the error. [Citations.]" (*People v. Moore* (1996) 44 Cal.App.4th 1323, 1330-1331.) The relevant inquiry is " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution. [Citation.]" (*Estelle v. McGuire* (1991) 502 U.S. 62, 72.)

"The trial court has the primary duty to help the jury understand the legal principles it is asked to apply. [Citation.]" (*People v. Moore*, *supra*, 44 Cal.App.4th at p. 1331.) But where the original instructions are full and complete, the court has discretion to determine what additional explanations are sufficient to satisfy the jury's requests for additional information. (*Ibid.*)

B. *Procedural Background*

The trial court instructed the jury with CALCRIM Nos. 252 and 860. CALCRIM No. 252 provides in part, regarding general intent: "The crime[s] . . . charged in Count[s] require[s] proof of the union, or joint operation, of act and wrongful intent. [¶] The following crime[s] . . . require[s] general criminal intent: [insert names of alleged offenses]. For you to find a person guilty of (this/these) crime[s] . . . , that person must not only commit the prohibited act [or fail to do the required act], *but must do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act [or fails to do a required act]; however, it is not required that he or she intend to break the law*. The act required is explained in the instruction for that crime . . . ." (Italics added.)

The trial court instructed the jury with CALCRIM No. 252 as modified to reflect the charges in the case:

18

"The crimes charged in this case require proof of the union or joint operation of act and wrongful intent.

"The following crimes require general criminal intent:

"Assault on a peace officer with a deadly weapon or force likely to produce great bodily injury, in violation of Penal Code section 245, subdivision (c), as charged in Counts One and Two;  [¶]  And failure to perform duty following an accident with property damage, in violation of Vehicle Code section 20002, subdivision (a), as charged in Count Five.  These particular crimes also require a specific mental state.  For you to find a person guilty of these crimes, that person must not only intentionally do a prohibited act or fail to do a prohibited act, *but must do so with a specific mental state.* [¶]  *The specific mental state required for these crimes is one of knowledge.*  [¶]  *The crime of assault on a peace officer with a deadly weapon or force likely to produce great bodily injury, Count One and Count Two, requires that a person knew, or should have known, that the person assaulted was a peace officer who was performing his or her duties.*  [¶]  *The crime of failure to perform duty following an accident with property damage, Count Five, requires that a person knew that he or she was involved in an accident that caused property damage, or knew from the nature of the accident that it was probable that . . . property had been damaged.*  The act and the mental state required are explained in the instruction for each of these crimes."  (Italics added.)

The trial court also instructed the jury with CALCRIM No. 860, which contained the elements necessary to find defendant guilty of counts one and two--the counts for assault with a deadly weapon on a peace officer.  The court instructed the jury in part: "To prove that the defendant is guilty of this crime, the People must prove that:

"1.  The defendant did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person; or did an act that by its nature would directly and probably result in the application of force to a person and the force used was likely to produce great bodily injury;

19

"2. The defendant did that act willfully;

"3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone;

"4. When the defendant acted, he had the present ability to apply force with a deadly weapon or likely to produce great bodily injury to a person;

"5. When the defendant acted, the person assaulted was lawfully performing his or her duties as a peace officer; and

"6. When the defendant acted, he knew, or reasonably should have known, that the person assaulted was a peace officer who was performing his or her duties.

"Someone commits an act *willfully* when he or she does it willingly or on purpose. *It is not required that he or she intend to break the law, hurt someone else or gain any advantage.*

"[¶] . . . [¶]

"[*T*]*he People are not required to prove that the defendant actually intended to use force against someone when he acted.*"[3] (Italics added.)

Defendant did not object to the instructions as given.

While deliberating, the jury asked three questions: 1. "In order to avoid count 2 [assault with a deadly weapon on a peace officer as to Gouveia], what would the defendant need to have done, short of stopping the car to avoid the assault charge?" 2. "May we have a second, more clear/specific definition on assault? After reviewing the sections ([CALCRIM No.] 860) in the packet we received, we would like more

---

[3] There are slight differences between the oral and written jury instructions that do not affect our analysis. "To the extent a discrepancy exists between the written and oral versions of jury instructions, the written instructions provided to the jury will control. [Citations.]" (*People v. Wilson* (2008) 44 Cal.4th 758, 803.)

20

clarification." 3. "Is motive and intent one in the same, and can we consider these in our deliberation?"

The trial court responded: "The instructions you were given address both motive and intent. For example, instruction #370[4] addresses motive and #252 addresses intent/mental state. Additionally, the act and the intent or mental state required for each crime are explained in the instruction for the crime(s). [¶] The set of instructions that you have is the law that governs the case. Some of the instructions may not apply, depending on your findings about the facts of the case. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."

C. *Forfeiture*

The People contend defendant has forfeited this argument by failing to raise it at the trial court. A party forfeits any challenge to a jury instruction that was correct in law and responsive to the evidence if the party failed to object in the trial court. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012.) This rule does not apply if the instruction was an incorrect statement of law (*id.* at p. 1012), nor does it apply if the instructional error affected defendant's substantial rights (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1087; § 1259). Therefore, in order to determine whether defendant forfeited his argument, we must first determine whether the instructions were correct in law and responsive to the evidence, and whether they affected defendant's substantial rights. (*People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249.)

---

**4** The trial court instructed the jury with CALCRIM No. 370, which provides: "The People are not required to prove that the defendant had a motive to commit any of the crimes charged. In reaching your verdict you may however, consider whether the defendant had a motive. [¶] Having a motive may be a factor tending to show that the defendant is guilty. Not having a motive may be a factor tending to show the defendant is not guilty."

D. *Analysis*

Although defendant notes that the trial court's instruction did define "general criminal intent" for the jury, he argues that the instruction did not sufficiently convey to the jury that it was, indeed, defining "general criminal intent." He points to the jury's questions as proof that the instructions confused the jury as to the intent required to find defendant guilty of the assault counts.

We see no confusion. CALCRIM Nos. 252 and 860 specified the criminal intent necessary to find defendant guilty of assault with a deadly weapon on a peace officer. The instructions conveyed that defendant possessed the required mental state to find him guilty of that crime if he willfully did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person. He acted willfully if he did the act on purpose, but not necessarily with the intent to break the law, hurt someone else, or gain any advantage. Finally, defendant must have known or should have known that the person assaulted was a peace officer who was performing her duties. We conclude these instructions adequately identified for the jury what mental state was required to find defendant guilty of this charge.[5]

Defendant's reliance on the jury's questions to the trial court is not persuasive. The jury's first question asked the court about the factual scenario supporting the assault charge on which it ultimately acquitted; that is a question about satisfying the elements of that crime, not finding general criminal intent. The jury's second question suggested that it remained confused about the elements of assault generally.

---

[5] The court similarly instructed the jury that it must find defendant acted "willfully" regarding the hit and run count, and the court defined "willfully" as it did in CALCRIM No. 860.

The jury's third question sought clarification on whether it could consider defendant's motive in its deliberations. The trial court properly referred the jury back to CALCRIM Nos. 252 and 370 and the instructions on the individual crimes.

We also disagree with defendant that the jury verdicts suggested a compromise based on a lack of understanding. As we have discussed, the evidence is sufficient to find defendant guilty of assaulting Robertson. The charge of assaulting Gouveia was based on entirely different conduct, where defendant was boxed into a parking lot and sought to get out after hitting another car. The jury may have concluded that defendant was preoccupied with those circumstances, and thus not reasonably aware that his act would probably result in the application of force to Gouveia, or even that defendant's act of driving near Gouveia was *not* likely to result in the application of force. We do not conclude that the incidents involved in the two assault counts were so similar as to suggest the jury simply compromised by finding defendant guilty of only one. Moreover, even if the jury compromised by finding defendant guilty of one assault and not the other, an inconsistent verdict that is the result of compromise does not necessarily imply lack of understanding as defendant suggests. (See *People v. Lewis* (2001) 25 Cal.4th 610, 656 [asserted inconsistency in verdicts, without more, does not suggest jury confusion].)

Defendant does not challenge that the instruction was a correct statement of the law; he claims only that it lacked clarity. We conclude the instructions taken together adequately instructed the jury on the law, and defendant's substantial rights were not affected. Therefore, defendant forfeited his argument by failing to object.

VII

*Fines and Fees*

At sentencing, the trial court imposed a $1,500 restitution fine (§ 1202.4, subd. (b)(1)), a stayed $1,500 parole revocation fine (§ 1202.45), a $120 conviction assessment fee (Gov. Code, § 70373), a $160 court operations fee (§ 1465.8), a $12 penalty pursuant to the Emergency Medical Air Transport Act (Gov. Code, § 76000.10), $150 restitution

23

fines on the misdemeanor hit and run and vehicle theft counts, and jail booking and classification fees of $453.62 and $90.65 (*Id.*, § 29550.2).[6]  The court also ordered defendant to pay the previously suspended $300 restitution fine in the case on which the court revoked probation.  Defendant contends we must remand for a hearing on his ability to pay the fines and fees pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157.  We decline to do so.

A.  *Forfeiture*

The People argue forfeiture.  The trial court sentenced defendant on March 22, 2019.  *Dueñas*, on which defendant bases his claim, was filed on January 8, 2019.  Despite the fact that *Dueñas* was published before defendant's sentencing hearing, defendant did not claim an inability to pay or seek a hearing thereon.  Therefore, he forfeited his argument.  (See *People v. Trujillo* (2015) 60 Cal.4th 850, 859 [the constitutional nature of the defendant's claim regarding his ability to pay did not justify a deviation from the forfeiture rule]; *People v. Nelson* (2011) 51 Cal.4th 198, 227 [ability to pay restitution fine is forfeited by failure to object at the sentencing hearing]; *People v. Avila* (2009) 46 Cal.4th 680, 729 [forfeiture rule applies to defendant's claim that restitution fine amounted to an unauthorized sentence based on his inability to pay]; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033 [failure to object to maximum restitution fine on ground of inability to pay forfeits *Dueñas* issue].)

Defendant contends his failure to object in the trial court does not forfeit his challenge because the imposition of fines and fees exceeded the jurisdiction of the trial court, resulting in an unauthorized sentence.  (See *People v. Scott* (1994) 9 Cal.4th 331, 354 [sentence is "unauthorized" where it could not lawfully be imposed under any

---

[6]  The court also ordered defendant to pay direct victim restitution to one victim  in the amount of $1,000 and retained jurisdiction as to another victim.  Defendant does not challenge these rulings.

circumstance in the particular case].)  An "unauthorized sentence" may be corrected on appeal because it presents pure questions of law independent of any factual issues. (*People v. Smith* (2001) 24 Cal.4th 849, 852.)  Here, the question of whether the fines and fees may be imposed requires a factual determination about defendant's ability to pay. Therefore, the imposed fines and fees do not result in an unauthorized sentence that may be corrected on appeal without an objection in the trial court.[7]

B.  *Ineffective Assistance of Counsel*

Anticipating our conclusion that he forfeited his claim, defendant contends his trial counsel was constitutionally ineffective for failing to object to the imposition of the fines and fees without a hearing on his ability to pay.  As we stated *ante*, a claim of ineffective assistance of counsel requires defendant to show by a preponderance of the evidence that (1) counsel's performance fell below the objective standard of prevailing professional norms, and (2) defendant was prejudiced by counsel's failing.  (*Strickland v. Washington, supra,* 466 U.S. at pp. 688-695.)  On direct appeal, a conviction will be reversed for ineffective assistance "only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding."  (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Here, the record is silent as to why defense counsel raised no *Dueñas* objection. Counsel focused on securing a lower prison sentence for defendant through the application of section 654 and concurrent sentencing, and asserted defendant's remorse.

---

[7] Defendant contends section 1237.2 "specifically authorizes an appeal regarding an error in the imposition of calculation of fines even 'if the error is not discovered until after sentencing.' "  But section 1237.2 "only applies where the erroneous imposition or calculation of fines, penalty assessments, surcharges, fees, or costs are the sole issue on appeal."  Therefore, that section is not applicable here.

Counsel also discussed defendant's history and asked for drug treatment.  It is possible that counsel believed focusing on these issues would provide more meaningful assistance to defendant than arguing for a reduction in the assessed fines and fees.  Accordingly, it would be inappropriate to decide the merit of defendant's ineffective assistance of counsel claim here.  The issue is more appropriately considered in a habeas corpus proceeding.

For these reasons, the contention fails.

### DISPOSITION

The judgment is affirmed.


_____/s/_____
Duarte, J.


We concur:


_____/s/_____
Mauro, Acting P. J.


_____/s/_____
Renner, J.


26