Filed 1/22/24  P. v. Hillman CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>FRANK JACOB HILLMAN,<br><br>        Defendant and Appellant. | F085401<br><br>(Super. Ct. No. BF165130A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Frank Jacob Hillman was charged by information of first degree murder of Shawn Bivens (Pen. Code, § 187, subd. (a)).  Following a jury trial, the jury found

appellant guilty of the lesser-included offense of second degree murder. Appellant was sentenced to a prison term of 15 years to life.

On appeal, appellant contends the judgment must be reversed because the trial court erred (1) by admitting evidence of prior uncharged misconduct under Evidence Code[1] section 1101, subdivision (b), and (2) by failing to instruct the jury on the lesser-included offense of involuntary manslaughter.

Finding no error as to the first claim, and finding the second claim forfeited, we affirm.

## FACTS

### Prosecution Case

#### Charged Conduct

On August 7, 2016, appellant was parked in his vehicle at a motel/housing complex. Bivens approached appellant, apparently asked him for money, and the two began arguing. Appellant started to drive away, and Bivens threw a wrench at appellant's car. Appellant turned his vehicle around, drove towards Bivens, and struck him with the vehicle. The impact killed Bivens. Surveillance footage of the incident was played for the jury. Appellant was observed by a neighbor having trouble getting the car into gear after striking Bivens and then driving away from the scene. Bivens was found by police wedged against a chain link fence.

After the incident, appellant went home to his girlfriend, Amanda Reed, and appeared "a little shook up." Appellant told Reed he got into a fight with someone and hit him with the car. Reed told appellant they needed to return to the scene, which was within walking distance from their residence, and on the way, appellant was emotional and crying and said it was an accident. Reed told police appellant reported he was just trying "to scare" Bivens.

---

[1] All further undesignated statutory references are to the Evidence Code.

An auto mechanic who replaced the alternator on appellant's vehicle on July 29, 2016, testified he had test driven the vehicle for five to 10 minutes and noticed no issues with the steering, braking, or any other problems with the vehicle. A Bakersfield police officer conducted an inspection of the vehicle in conjunction with the investigation of the incident. His inspection revealed that no vehicle malfunction caused it to collide with Bivens, and the brake pads were within the manufacturer's specifications.

### *Uncharged Prior Conduct*

The week prior to Bivens's death, appellant, Reed, and their children went to Redondo Beach in the same vehicle he was driving on August 7, 2016. On that trip, on August 1, 2016, appellant was driving and screaming at Reed, and in attempts to de-escalate the situation, she had him pull into a 7-11. She went into the 7-11 and asked the employee to call 911, while appellant stayed outside. From inside, she observed another woman screaming in appellant's face and arguing with him. Eventually, the woman and appellant got into their respective vehicles and left the parking lot. Reed was worried because one of her children was in the car with appellant, but appellant came back into the parking lot a minute later. The police arrived shortly after.

The 7-11 employee testified that while he was calling 911, he observed appellant getting out of the car and making aggressive verbal threats toward a woman who appeared to be trying to provide assistance. The employee opined appellant was trying to leave, and the other woman was trying to tell him not to go as there was a child in the car. The other woman got into her car and appellant got into his car. While the woman's car was still in the parking lot, appellant accelerated towards her vehicle but slammed on his brakes before there was a collision. It appeared to the employee to be intentional, like appellant was going to ram the woman's car. At trial, the employee testified appellant left the parking lot first.

The Redondo Beach police officer who responded to the scene observed appellant's vehicle parked in the parking lot and contacted Reed, who was "very upset."

Reed was "frantic, crying, rapidly trying to explain what was going on." Appellant was ordered to exit the vehicle, but he initially refused. Eventually, he was placed in handcuffs and arrested. Reed told the officer appellant had been driving the vehicle around Redondo Beach, yelling at her, speeding around town with their family in the car, and acting completely irrational. She was fearful of his "irrational behavior and erratic driving." She told the officer she saw appellant verbally accosting the other woman, yelling and advancing toward her in an aggressive manner, and later quickly accelerating toward the woman's vehicle and abruptly stopping before rearending it. He accelerated out of the parking lot quickly enough to make the tires screech. The 7-11 employee told the officer that appellant had accelerated toward the woman's vehicle at a high rate of speed and slammed on his brakes within a foot or two of the woman's vehicle, and chased the woman out of the parking lot, accelerating hard enough to make the tires screech.

On cross-examination, the Redondo Beach officer testified that appellant's arrest was for child endangerment, and the reason was that he was accelerating through the parking lot with a car seat that was not strapped in properly.

### Defense Case

The defense elicited testimony from the investigating officer of the charged offense that he overheard a conversation between appellant and Reed after appellant was arrested where he told her that Bivens tripped and that if he had not have fallen, appellant would have been able to stop the car in time and would not have hit him. He said he did not stop in enough time and that he "was either going too fast or he [Bivens] … didn't get out of the way in enough time."

A traffic accident reconstruction expert testified on behalf of appellant. He testified the physical evidence of the scene including the surveillance footage was consistent with appellant braking at the time he collided with Bivens.

## DISCUSSION

### I.    Admission of Uncharged Conduct

#### A.    *Relevant Background*

The People moved in limine to admit, and the defense moved to exclude, the Redondo Beach incident.  The People alleged the prior incident was "relevant to 1) [appellant's] intent to kill, 2) [appellant's] knowledge that driving in direction of others is dangerous to human life, 3) [appellant's] knowledge that his brakes did work and would work, and 4) absence of mistake or accident in Shawn Bivens' murder on August 7, 2016."

In ruling on the People's motion, the trial court noted it understood the defense's position was that hitting Bivens was an accident.  The trial court concluded "the activity that happened six days before goes to intent and lack of accident, and as a result, I'll allow the People to use it in their case in chief."  The trial court added, "that will be under intent.  Not knowledge."  Accordingly, the trial court denied appellant's motion to exclude the evidence.

#### B.    *Standard of Review and General Legal Principles*

Trial courts have broad discretion in determining the admissibility of evidence, and we review challenges to the admission of evidence for abuse of discretion.  (*People v. Jackson* (2016) 1 Cal.5th 269, 320–321.)  Under this standard, the court's ruling " ' "will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' "  (*People v. Lewis* (2009) 46 Cal.4th 1255, 1286.)

Evidence of prior misconduct is generally inadmissible to prove conduct on another specified occasion or to prove a person's disposition to commit such an act. (§ 1101, subd. (a).)  Section 1101, subdivision (b) is an exception to this general rule, providing that evidence of specific prior acts may be admitted, " ' " 'when offered as

5.

evidence of a defendant's motive, common scheme or plan, preparation, intent, knowledge, identity, or absence of mistake or accident in the charged crimes.' " ' " (*People v. Scully* (2021) 11 Cal.5th 542, 586.) Evidence admitted under section 1101, subdivision (b) is also subject to analysis under section 352. (§ 1101.)

"Evidence is not inadmissible under section 352 unless the probative value is 'substantially' outweighed by the probability of a 'substantial danger' of undue prejudice or other statutory counterweights. Our high court has emphasized the word 'substantial' in section 352." (*People v. Holford* (2012) 203 Cal.App.4th 155, 167.)

### C.    Analysis

Appellant contends the uncharged act was not similar enough to the charged offense and, even if it was, it was "unwarrantedly prejudicial" and thus should have nonetheless been excluded. We disagree.

Uncharged misconduct is admissible to prove intent " 'only if the charged and uncharged crimes are sufficiently similar to support a rational inference' " on the issue. (*People v. Edwards* (2013) 57 Cal.4th 658, 711.) Admission of uncharged conduct to prove intent requires "[t]he least degree of similarity" of the purposes enumerated in section 1101, subdivision (b). (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)

We conclude the trial court did not abuse its discretion in determining the uncharged incident was sufficiently similar to the charged offense so as to be probative of intent or lack of mistake. We reject appellant's characterization that the incident was "a simple case of two vehicles almost colliding accidentally" and his contention that the Redondo Beach incident evidence did not "establish an intent on appellant's part to scare, threaten, or run into [t]he woman's vehicle." Contrary to appellant's assertions, the jury could have reasonably inferred appellant was angry at the woman as they were seen arguing, and he was observed being verbally aggressive toward her, and that he maneuvered his vehicle in an intentional and aggressive manner towards the woman's vehicle. This is sufficiently similar to the charged conduct where appellant, after getting

angry at Bivens for throwing a wrench at his car, drove the same vehicle he was driving in the Redondo Beach incident towards Bivens.

We also cannot say the trial court's conclusion that the probative value of the evidence was not "substantially" outweighed by a "substantial danger" of undue prejudice was an abuse of discretion. Factors that may be considered include, " '(1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses.' " (*People v. Culbert* (2013) 218 Cal.App.4th 184, 192.)

Here, the uncharged misconduct happened a mere six days before the charged offense, so it was close in time, and therefore more relevant than if it had occurred further in the past. While the uncharged incident was inflammatory in that it included aggression toward another person, and appellant was ultimately arrested for child endangerment, it was not nearly as egregious as the charged offense—first degree murder. Thus, the probability that the jury would have been unduly prejudiced toward appellant was low. Additionally, the jury's decision to convict appellant of a lesser included offense tends to show they diligently discharged their duty rather than trying to punish appellant for his past behavior. Appellant does not contend the prosecution's presentation of the Redondo Beach evidence took a substantial amount of time during trial, nor do we find it did, and the jury was correctly instructed on how to use the evidence, limiting potential confusion to the jury.

For the above reasons, we conclude the trial court did not err by admitting the evidence of the Redondo Beach incident. We reject appellant's brief contention that his federal constitutional right to due process was violated by admission of this evidence. Because we find no error under state law, we find the alleged error does not rise to the level of a due process violation. (See *People v. Garcia* (2008) 168 Cal.App.4th 261, 278.)

7.

**II.     Failure to Give Lesser Included Instruction—Involuntary Manslaughter**

   ***A.     Relevant Background***

   Following an in-chambers jury instruction conference, the trial court put on the record that "after discussing the case, … we are going to go murder one, murder two, and voluntary manslaughter" and "we wanted to put on the record that [defense counsel is] not asking for involuntary due to tactical or strategic reasons based on [the defense's] argument." Defense counsel responded, "Yes, your Honor. Based on the state of the evidence and how I believe the defense would proceed, it's a strategic decision not to have that instruction."

   The trial court instructed the jury on first degree murder, second degree murder, and voluntary manslaughter. Defense counsel's argument to the jury was that appellant was not guilty of murder, but guilty of voluntary manslaughter.

   ***B.     Analysis***

   Appellant now claims the trial court erred by failing to instruct the jury on involuntary manslaughter. Respondent contends, as a threshold matter, that appellant's claim is barred by the invited error doctrine. We agree with respondent.

   The trial court has a sua sponte duty to instruct fully on all lesser necessarily included offenses supported by the evidence. (*People v. Souza* (2012) 54 Cal.4th 90, 114.) This duty " ' "exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given." ' " (*Ibid*.) "Nevertheless, the claim may be waived under the doctrine of invited error if trial counsel both ' "intentionally caused the trial court to err" ' and clearly did so for tactical reasons. [Citation.] Invited error will be found, however, only if counsel expresses a deliberate tactical purpose in resisting or acceding to the complained-of instruction." (*Ibid*.)

   Here, defense counsel clearly indicated he was not requesting the jury be instructed on involuntary manslaughter for strategic reasons, and it appeared the trial court did not give the instruction based on defense counsel's position. Therefore,

assuming for the purpose of appellant's argument that involuntary manslaughter is a lesser included offense obligating the trial court to instruct the jury on it,[2] we find appellant's instructional error claim forfeited.

We reject appellant's suggestion that the invited error doctrine does not apply when the trial court has a sua sponte duty to give an instruction. He does not support his assertion with authority and does not address our high court's contrary indication in *People v. Souza*, *supra*, 54 Cal.4th 90 by which we are bound. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) To the extent appellant argues that his claim is preserved because defense counsel did not object to the instruction but rather did not request it, we do not find this to be a substantive distinction. Because the purpose of the invited error doctrine is to "prevent a defendant from asserting on appeal that a trial court decision for which he advocated below is error and therefore a basis for reversal" and thus "the crucial inquiry is whether defendant *advocated* for the erroneous ruling, not whether the trial court's error was *caused* by that advocacy." (*People v. Cady* (2016) 7 Cal.App.5th 134, 147, fn. 4.)

In anticipation of our finding appellant invited the error and therefore forfeited this claim, appellant contends that defense counsel's failure to request an involuntary manslaughter instruction constituted ineffective assistance of counsel. We do not find ineffective assistance of counsel on this appellate record.

To prevail on an ineffective assistance of counsel claim, appellant must establish that (1) the performance of his trial counsel fell below an objective standard of

---

**2**     The parties disagree as to whether involuntary manslaughter is actually a lesser-included offense of the crime charged in the present case. (See Pen. Code, § 192, subd. (b) [the offense of involuntary manslaughter "shall not apply to acts committed in the driving of a vehicle"].) We assume only for the purpose of appellant's argument that it is. Given our conclusion appellant invited any error and therefore forfeited his claim, we do not reach the merits of whether involuntary manslaughter was a lesser-included offense under the facts of this case.

9.

reasonableness and (2) prejudice occurred as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Anderson* (2001) 25 Cal.4th 543, 569.) In evaluating an ineffective assistance of counsel claim, we " ' "presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." ' " (*People v. Bell* (2019) 7 Cal.5th 70, 125.) Reversal is appropriate "only if there is affirmative evidence that counsel had ' " 'no rational tactical purpose' " ' for an action or omission." (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) Here, counsel informed the court it was a strategic decision not to have the instruction and "we will not second-guess the representation." (See *People v. Medellin* (2020) 45 Cal.App.5th 519, 525, fn. 4.)

For the reasons set forth, we do not reach the merits of appellant's claim that the trial court erred by failing to instruct on involuntary manslaughter.

## **DISPOSITION**

The judgment is affirmed.

DE SANTOS, J.

WE CONCUR:

POOCHIGIAN, Acting P. J.

SMITH, J.

10.